NIMMONS, Judge,
dissenting.
The defendant was convicted of manslaughter under Section 782.07, Florida Statutes (1981), and DWI manslaughter under Section 860.01(2), Florida Statutes (1981).[1] The former provides:
782.07 Manslaughter. — The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, shall be deemed manslaughter and shall constitute a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
The latter provides in part:
860.01 Driving automobile while intoxicated; punishment.
(1) It is unlawful for any person, while in an intoxicated condition or under the influence of intoxicating liquor, model glue, as defined in s. 877.11, or any substance controlled under chapter 893 to such extent as to deprive him of full possession of his normal faculties, to drive or operate over the highways, streets, or thoroughfares of Florida any automobile, truck, motorcycle, or other vehicle. Any person convicted of a violation of this section shall be punished as provided in s. 316.193.
(2) * * * [l]f the death of any human being be caused by the operation of a motor vehicle by any person while intoxicated, such person shall be deemed guilty of manslaughter, and on conviction be punished as provided by existing law relating to manslaughter, (emphasis supplied)
The application of the Blockburger[2] double jeopardy test was recently discussed by the Florida Supreme Court in State v. Baker, 456 So.2d 419 (Fla.1984):
In Blockburger v. United States, 284 U.S. 299 [52 S.Ct. 180, 76 L.Ed. 306] (1932), the Supreme Court considered whether a single act could result in multiple punishments and stated:
The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.
Id. at 304 [52 S.Ct. at 182], The Court later explained the Blockburger test:
As Blockburger and other decisions applying its principle reveal the Court’s application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the Blockbur-ger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.
Iannelli v. United States, 420 U.S. 770, 785 n. 17 [95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616] (1975) (citations omitted). Blockburger “means that two statutory *449 offenses are essentially independent and distinct if each offense can possibly be committed without committing the other offense.” 425 So.2d at 50 (Cowart, J., dissenting) (emphasis in original). The Blockburger test is a rule of statutory construction which “should not be controlling where, for example, there is a clear indication of contrary legislative intent.” Albernaz v. United States, 450 U.S. 333, 340 [101 S.Ct. 1137, 1143, 67 L.Ed.2d 275] (1981).
In Borges v. State [415 So.2d 1265 (Fla.1982) ] we held that separate convictions and sentences did not violate the double jeopardy clause. We relied on Albernaz to reach the conclusion that
where the legislature has expressed its intent that separate punishments be imposed upon convictions of separate offenses arising out of one criminal episode, the Double Jeopardy Clause is no bar to such imposition.
415 So.2d at 1267.
In determining whether, under Blockbur-ger, there are two offenses or only one, we need only look to the statutory elements of each crime. If each has an element not required to prove the other, there are two crimes even where the two crimes are proved by the same facts. State v. Baker, supra; Bell v. State, 437 So.2d 1057 (Fla.1983); Gordon v. State, 457 So.2d 1095 (Fla. 5th DCA 1984). Applying such test to this case, it appears we are dealing with two offenses. An element of DWI manslaughter is the operation of a vehicle while intoxicated. Manslaughter under Section 782.07 includes no such element. And while Section 782.07 includes culpable negligence as an element, such element is not included within DWI manslaughter.
Our inquiry does not end there because, as indicated in the above quote from State v. Baker, supra, the Blockburger test is a rule of statutory construction which must yield when there is a clear indication of contrary legislative intent. See also Bell v. State, supra at 1060. Certainly, the provisions of Section 775.021(4), Florida Statutes (1981), do not suggest a contrary intent:
(4) Whoever, in the course of one criminal transaction or episode, commits an act or acts constituting a violation of two or more criminal statutes, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense, excluding lesser included offenses, committed during said criminal episode, and the sentencing judge may order the sentences to be served concurrently or consecutively.[3]
Notwithstanding the Blockburger criteria and the provisions of Section 775.021(4), both of which seem to point generally to the treatment of the subject offenses as two separate crimes, I am unable to ascribe to the legislature an intent that a defendant who has killed one person should be convicted of two felonious homicides. This would be contrary to the many holdings of the appellate courts of this state which have considered this subject, see Gordon v. State, 457 So.2d 1095 (Fla. 5th DCA 1984) (and cases therein cited), including this court, see Stricklen v. State, 332 So.2d 119 (Fla. 1st DCA 1976). I realize that this court’s recent decision in Houser v. State, 456 So.2d 1265 (Fla. 1st DCA September 26, 1984), departs from the above holdings and approves multiple convictions for vehicular homicide under Section 782.071, Florida Statutes, and DWI manslaughter under Section 316.1931(2) (formerly Section 860.-01). , In the first place, I do not agree with the Houser decision and would propose that we recede therefrom. However, even without receding from Houser, the instant case could be distinguished from Houser in terms of the indicia of legislative intent.
In our case, the defendant, as noted, was convicted of manslaughter under Section 782.07 and DWI manslaughter under Section 860.01 (now Section 316.1931). The DWI manslaughter statute, after reciting the elements of the offense, provides that the offender “shall be deemed guilty of *450 manslaughter, and on conviction be punished as provided by existing law relating to manslaughter.” This language unquestionably refers back to the “general” manslaughter statute, section 782.07.[4] Particularly in light of the above statutory provisions and the specific reference by the one statute to the other, I conclude that separate homicide convictions under both statutes would be contrary to legislative intent. And I believe such intent would control over the more general intent expressed in Section 775.021(4), supra. If the court does not wish to recede from Houser, perhaps Houser could be distinguished on the basis that Houser was convicted of DWI manslaughter and vehicular homicide under Section 782.071 (instead of general manslaughter under Section 782.07). However, I would not want to rely upon such a distinction because I believe that convictions of both DWI manslaughter and vehicular homicide are also contrary to legislative intent.
Finally, I would add that had the majority of the court been persuaded to my views, I would, prior to final determination of this cause on appeal, have nevertheless favored inviting the Attorney General’s participation on behalf of the State pursuant to Fla.R.App.P. 9.140(g).

. In 1982, the legislature transferred Section 860.01 to Section 316.1931 with amendments not material to the instant case. See Chapter 82-155, s. 1, Laws of Florida.

. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

. The "lesser included offenses” referred to in Section 775.021(4) mean "necessarily” lesser included offenses. See State v. Baker, supra. Although this section was amended in 1983, Chapter 83-156, Laws of Florida, the above quoted 1981 version is applicable to the instant case. However, the same result would obtain even under the 1983 amendment.

. When the DWI manslaughter law was initially enacted by Chapter 9269, Laws of Florida 1923, the predecessor to the general manslaughter statute was on the books. See Vol. 2 RGS § 5039 (1920).